# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C. and<br>SLING TV L.L.C., | §<br>§<br>§ | Case No. 22-cv-1748 |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | |
| WILLIAM EVERLY III, | §<br>§ | |
| Defendant. | §<br>§ | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs DISH Network L.L.C. ("DISH") and Sling TV L.L.C. ("Sling") file this action against Defendant William Everly III ("Everly") for violations of the Federal Communications Act, 47 U.S.C. § 605, and Digital Millennium Copyright Act, 17 U.S.C. § 1201.

## NATURE OF THE ACTION

1. Plaintiffs are television service providers that deliver programming live and on demand to millions of authorized, fee-paying subscribers in the United States by means of secured internet and satellite communications. Everly is involved in operating illicit streaming services that capture Plaintiffs' internet communications of television programming by circumventing Plaintiffs' security measures and then retransmit that programming without authorization to customers that purchased access to these services from Everly.

## PARTIES

2. Plaintiff DISH Network L.L.C. is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

3. Plaintiff Sling TV L.L.C. is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

4. Defendant William Everly III is an individual residing in Toledo, Ohio.

## JURISDICTION & VENUE

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims for violations of 47 U.S.C. § 605 and 17 U.S.C. § 1201.

6. Everly is subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Everly resides in Ohio and, through his wrongful conduct identified herein, Everly purposefully directed his conduct towards and purposefully availed himself of the privileges of conducting business in Ohio, causing injury to Plaintiffs in Ohio.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because Everly resides in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## THE REBROADCASTING SCHEME
*Plaintiffs' Programming*

8. Plaintiffs deliver television programming to millions of subscribers nationwide using the internet (the "Programming"). Plaintiffs' internet transmissions of the Programming are secured using digital rights management ("DRM") technologies that include, based upon the subscriber's viewing platform, Google's Widevine DRM, Apple's FairPlay DRM, and Microsoft's PlayReady DRM. Each DRM has a key-based encryption and decryption process that is used to make the Programming accessible to only authorized subscribers that purchased access to the Programming from Plaintiffs and restricts unauthorized access to, copying, and retransmission of the Programming.

*PrimeStreams*

9. PrimeStreams is an illicit streaming service that provides users with unauthorized access to the Programming, thereby allowing those users to receive the Programming without paying the requisite subscription fee to Plaintiffs. Periodic monitoring conducted on a sampling of channels on PrimeStreams identified more than one hundred instances where the Programming was retransmitted, including The Longhorn Network, Start TV, Starz Edge, and Starz West channels.

10. The Programming retransmitted on PrimeStreams was received from Plaintiffs' internet communications. Identifiers unique to Plaintiffs' internet communications were detected when viewing the Programming on PrimeStreams, thereby confirming that Plaintiffs' internet communications are the source of the Programming retransmitted on the PrimeStreams service.

11. On information and belief, the Programming retransmitted on PrimeStreams is acquired by circumventing the DRMs implemented by Plaintiffs. The DRMs are believed to be circumvented using either a differential fault analysis attack where faults are injected into the DRM to disrupt its operation and create pathways to extract the keys necessary to decrypt the Programming, or a man-in-the-middle attack whereby customized software is used to bypass the DRM by intercepting the Programming passing from the DRM's decryption library to the user's viewing platform.

12. PrimeStreams is monetized through the sale of codes that are designed and produced to enable a set-top box or other internet-enabled device to access servers used to retransmit the Programming to users of the PrimeStreams service ("Device Code"). Users can purchase Device Codes directly from the operators of PrimeStreams or through

various resellers that often rebrand the PrimeStreams service with their own business name.[1]

### KTV & Tixe

13. Everly resold the PrimeStreams service using the business name KTV Hosting and the web domain ktvhosting.com (the "KTV Service"). Everly registered the fictitious business name KTV Hosting in Ohio and identified himself as owner of the business.

14. Everly sold Device Codes on ktvhosting.com for approximately $10 per month of access to the KTV Service. Purchasers could also select Device Codes that allowed for additional device connections at varying prices. Everly attempted to disguise his sale of Device Codes by referring to them as Hosting Plans.



*Excerpt from www.ktvhosting.com*

15. Everly expanded his role in the PrimeStreams organization in or around April 2022 by acquiring the customer base of the FireStick Steve or FSS service, which like Everly's KTV Service was operating as a rebranded version of the PrimeStreams service. Everly acquired the FSS customer base from Daugherty – one of the defendants

---

[1] Plaintiffs filed suit against defendants Daniel Scroggins, Steven Daugherty, and Dscroggs Investments LLC on May 11, 2022 for their alleged involvement in the PrimeStreams service. *See* No. 2:22-cv-00060 (E.D. Ky.).

in the PrimeStreams case –who at the time was facing legal pressure from Plaintiffs in the form of pre-suit cease and desist demands.

16.  Everly's acquisition of the FSS customer base included both end users and resellers of the FSS service. On information and belief, FSS users were migrated to Everly's KTV Service and purchased Device Codes from Everly in the same manner as other KTV Service users. Everly is believed to have transitioned FSS resellers to a new rebranded version of the PrimeStreams service that Everly created called Tixe Hosting (the "Tixe Service").



*Email to FSS user from KTV Hosting*     *Email to FSS reseller from Tixe Hosting*

17.  Everly sold Device Codes to resellers of the Tixe Service in bundles or panels referred to as "Reseller Credits" using the web domain tixehosting.com. Resellers purchased Device Code panels from Everly for approximately $2.75 to $3.50 per month of access to the Tixe Service, the price depending on factors such as the quantity purchased. Everly communicated with his resellers using the Discord platform where he posted as "TixeHoster," among other means of communication.

5



*Excerpt from Discord Group*

18. Everly directed his resellers to mask the origins of the Tixe Service by forbidding the use of the name "Prime" in their rebrand. Everly also demanded that his resellers not advertise their rebranded services on popular social media websites and refrain from screenshotting any messages posted in the Discord group.



*Excerpt from Discord Group*

19. Everly also instructed his Tixe Service resellers to immediately contact him upon receiving a demand letter from Plaintiffs.

6



*Excerpt from Discord Group*

20. Plaintiffs' Programming continued to be retransmitted without authorization on the PrimeStreams service and by extension Everly's KTV Service and Tixe Service (the "Pirate Services"). Everly was notified on July 15, 2022 that his operation of the Pirate Services violated federal laws and that he must cease and desist from such activity but the Pirate Services continue to operate.

### CLAIMS FOR RELIEF

### COUNT I
### Violations of the FCA, 47 U.S.C. § 605(a)

21. Plaintiffs repeat and reallege the allegations in paragraphs 1-20.

22. Everly assisted in receiving and transmitting Plaintiffs' internet communications of the Programming through his operation of the Pirate Services. Everly divulged and published the Programming to users of his Pirate Services that were not entitled to receive the Programming, without Plaintiffs' authorization and in violation of 47 U.S.C. § 605(a).

23. Everly's violations of 47 U.S.C. § 605(a) were willful and for purposes of commercial advantage and private financial gain.

7

24. Everly was aware or had reason to believe his actions violated 47 U.S.C. § 605(a). Such violations have caused damage to Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Everly will continue to violate 47 U.S.C. § 605(a).

## COUNT II
### Violations of the FCA, 47 U.S.C. § 605(e)(4)

25. Plaintiffs repeat and reallege the allegations in paragraphs 1-20.

26. Everly sells and distributes Device Codes for purposes of divulging and publishing the Programming to users of his Pirate Services in violation of 47 U.S.C. § 605(e)(4). Everly intended for Device Codes to be used in divulging and publishing the Programming to users of his Pirate Services that were not entitled to receive the Programming, which is activity proscribed by 47 U.S.C. § 605(a).

27. Everly's violations of 47 U.S.C. § 605(e)(4) were willful and for purposes of commercial advantage and private financial gain.

28. Everly was aware or had reason to believe that his actions violated 47 U.S.C. § 605(e)(4). Such violations caused damage to Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Everly will continue to violate 47 U.S.C. § 605(e)(4).

## COUNT III
### Violations of the DMCA, 17 U.S.C. § 1201(a)(2)

29. Plaintiffs repeat and reallege the allegations in paragraphs 1-20.

30. Plaintiffs use technological protection measures such as the DRMs to effectively control access to their internet communications of the Programming that includes works protected under the Copyright Act. Plaintiffs are authorized to protect the copyrighted content aired on their internet communications from unauthorized reception and viewing and implement these technological protection measures with the copyright owners' consent.

31. On information and belief, the DRMs implemented by Plaintiffs are circumvented to acquire the Programming that is retransmitted without authorization on the Pirate Services. The DRMs are believed to be circumvented using either a differential fault analysis attack or a man-in-the-middle attack carried out as part of the operation of the Pirate Services. The Pirate Services, or at least a component or part thereof, are primarily designed and produced for the purpose of circumventing the DRMs implemented by Plaintiffs and have only limited commercially significant purpose or use other than to circumvent such DRMs. Everly violates 17 U.S.C. § 1201(a)(2) by manufacturing, offering to the public, providing, or otherwise trafficking in the Pirate Services.

32. Everly's actions that constitute violations of 17 U.S.C. § 1201(a)(2) have been performed without the authorization or consent of Plaintiffs or, on information and belief, any owner of the copyrighted content provided by Plaintiffs.

33. Everly's violations of 17 U.S.C. § 1201(a)(2) were willful and for purposes of commercial advantage and private financial gain.

34. Everly was aware or had reason to believe his actions violated 17 U.S.C. § 1201(a)(2). Such violations have caused damage to Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Everly will continue to violate 17 U.S.C. § 1201(a)(2).

**PRAYER FOR RELIEF**

Plaintiffs request a judgment against Everly as follows:

A. For a permanent injunction under Fed. R. Civ. P. 65, 47 U.S.C. § 605(e)(3)(B)(i), and 17 U.S.C. § 1203(b)(1) that prohibits Everly, and any officer, agent,

servant, employee, or other person acting in active concert or participation with them that receives actual notice of the order, from:

    1.    Divulging or publishing DISH or Sling's internet communications of television programming or the content of such communications without authorization, including through the Pirate Services or any similar streaming service;

    2.    Selling or distributing any device or equipment that is intended for divulging or publishing DISH or Sling's internet communications of television programming or the content of such communications, including codes or credits used to access the Pirate Services or any similar streaming service;

    3.    Manufacturing, offering to the public, providing, or otherwise trafficking in the Pirate Services or any similar streaming service, codes or credits used to access the Pirate Services or any similar streaming service, or any other technology, product, service, device, component, or part thereof that:

    a.    is primarily designed or produced for circumventing a technological measure employed by DISH or Sling that controls access to copyrighted works;

    b.    has only limited commercially significant purpose or use other than circumventing a technological measure employed by DISH or Sling that controls access to copyrighted works;

    c.    is marketed for purposes of circumventing a technological measure employed by DISH or Sling that controls access to copyrighted works;

B. For an order impounding and allowing Plaintiffs to take possession of and destroy any codes or credits used to access the Pirate Services, any technologies used in circumventing the DRMs, and any other device, equipment, or technology in Everly's possession, custody, or control that the Court believes to have been involved in a violation of the FCA or DMCA, pursuant to 47 U.S.C. § 605(e)(3)(B)(i) and 17 U.S.C. § 1203(b)(2);

C. For an order permanently transferring all domain names that Everly used in connection with the Pirate Services to Plaintiffs;

D. For an order requiring Everly to preserve and turn over to Plaintiffs all hard copy and electronic records regarding persons involved in the Pirate Services;

E. Award Plaintiffs the greater of (1) their combined actual damages together with Everly's profits that are attributable to the violations identified in Count I, or (2) statutory damages up to $10,000 for each violation of 47 U.S.C. § 605(a), pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II). In either scenario, the damages should be increased by $100,000 for each violation, in accordance with 47 U.S.C. § 605(e)(3)(C)(ii);

F. Award Plaintiffs the greater of (1) their actual damages together with Everly's profits that are attributable to the violations identified in Count II, or (2) statutory damages up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II);

G. Award Plaintiffs the greater of (1) their actual damages together with Everly's profits that are attributable to the violations identified in Count III, or (2) statutory damages up to $2,500 for each violation of 17 U.S.C. § 1201(a)(2), pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

H. Award Plaintiffs their attorneys' fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii) and 17 U.S.C. § 1203(b)(4)-(5);

I. For a complete and accurate accounting of all profits and other benefits received by Everly as a result of the wrongful conduct identified in this complaint;

J. For pre and post-judgment interest on all damages awarded by the Court, from the earliest date permitted by law at the maximum rate permitted by law; and

K. For such additional relief as the Court deems just and equitable.

Dated: September 30, 2022	Respectfully submitted,

/s/Nathaniel R. Sinn
Nathaniel R. Sinn (0088467)
Porter Wright Morris & Arthur LLP
950 Main Ave, Suite 500
Cleveland, Ohio 44113
Phone: (773) 410-7763
Fax: (216) 443-9011
NSinn@porterwright.com

*Attorneys for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.*